UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cr-00116-TWP-DML |
| | ) | |
| RUSSELL CHARLES TAYLOR, | ) | -01 |
| | ) | |
| Defendant. | ) | |

ENTRY ON DEFENDANT'S MOTION TO SUPPRESS AND
GOVERNMENT'S THIRD MOTION *IN LIMINE*

This matter is before the Court on Defendant Russell Charles Taylor's ("Taylor") Motion to Suppress (Filing No. 62) and the Government's Third Motion *in Limine* (Filing No. 47). Taylor is scheduled for trial by jury on July 19, 2021, on multiple counts of sexual exploitation of minors, distribution and receipt of visual depictions of minors engaged in sexually explicit conduct and one count of conspiracy to possess visual depictions of minors engaging in sexually explicit conduct. He seeks to suppress the evidence seized following a search of his home, pursuant to a search warrant. Taylor argues the search of his home violated the Fourth Amendment because the search warrant was based upon an intentionally misleading affidavit. He also requests a *Franks* hearing. In its Third Motion *in Limine*, the Government asks for a preliminary ruling that it may present the evidence seized from Taylor's residence. For the following reasons, Taylor's Motion to Suppress and request for a *Franks* hearing are **denied**, and the Government's Motion is **granted**.

I.      BACKGROUND

On May 27, 2020, Taylor was charged in a 34-count Indictment with the following: twenty-four counts of sexual exploitation of a minor and attempted sexual exploitation of a minor in violation of 18 U.S.C. § 2251(a), (e), four counts of coercion and enticement in violation of 18

U.S.C. § 2422(b), three counts of distribution of visual depictions of a minor engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2), one count of receipt of visual depictions of minors engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2), one count of possession of visual depictions of minors engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4), and one count of conspiracy to possess visual depictions of minors engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4) (Filing No. 1).

The investigation into Taylor began in September 2014 when Indiana State Police ("ISP") Master Trooper Patrick Etter ("Trooper Etter") contacted ISP Detective Kevin Getz ("Detective Getz") regarding a possible bestiality and child pornography investigation involving Taylor. Trooper Etter learned through a female friend, "Jane Doe," that Taylor had offered to send her images of young girls. (Filing No. 47-5 at 16–17).

On October 3, 2014, Detective Getz spoke with Jane Doe on the telephone, and she alleged that she received several text messages from Taylor, and the messages were still on her cell phone. Detective Getz asked her if she would agree to be interviewed and consent to a search of her cell phone. She agreed to the interview and search, so Detective Getz contacted ISP Detective Sergeant Christopher Cecil ("Sergeant Cecil") and requested his help with the interview and forensic examination of Jane Doe's cell phone. Later that day, Detective Getz and Sergeant Cecil met with Jane Doe at her home for an interview. During the interview, Sergeant Cecil forensically extracted data from Jane Doe's cell phone. The data extraction was not complete when the interview was over, so Jane Doe consented to Detective Getz and Sergeant Cecil taking custody of her cell phone so they could complete the extraction. After the data extraction was completed, Sergeant Cecil returned the cell phone to Jane Doe the following day, on October 4, 2014. *Id.* at 17–18.

Detective Getz recorded the October 3, 2014 interview with Jane Doe (Filing No. 62-1), and during the interview, Jane Doe explained how she met Taylor and his then-wife, Angela Taylor ("Angela"), through her husband (Filing No. 47-5 at 17). Jane Doe's friendship with Taylor and Angela continued after the death of Jane Doe's husband in 2013. During their friendship, they exchanged numerous  text messages. *Id.*

Jane Doe informed Detective Getz and Sergeant Cecil that she boards horses at her property, and Taylor sent text messages asking her if he and Angela could come over to engage in sexual activity with a horse. When asked if she thought Taylor was joking, Jane Doe responded that she could tell Taylor was serious. Jane Doe stated that Taylor sent a text message to her that contained a photo of a dog licking the nude genitalia of a woman with the caption, "Here's Angie with her ex's dog." *Id.* Jane Doe showed this photo to Detective Getz and Sergeant Cecil during the interview. *Id.*

Jane Doe told Detective Getz and Sergeant Cecil that Taylor sent her a text message asking if she wanted to see images of "young girls." Taylor asked Jane Doe how young she was okay with, and she responded, "legal age," to which Taylor responded, "Ok[.] I wanted to ask lol. Keep in mind we do travel to Thailand on occasion :-)[.]" *Id.* at 18, 20–21. Sergeant Cecil inquired if Taylor sent images of young girls to her, and Jane Doe responded, "no." When asked if Taylor ever expressed interest in having sex with children, Jane Doe replied, "Not that I can remember, but he's the type of person that seems to be very sexually involved in whatever." (Filing No. 47-5 at 18.) Detective Getz asked Jane Doe if Taylor had sent any other images of sexual activity with animals, and she responded that the only image she received from him was the photo of the dog. She explained that Taylor and Angela liked to be sexually involved with other things, like messing around with horses and bondage acts using "handcuffs, ropes and stuff." *Id.* Jane Doe reported to

Detective Getz and Sergeant Cecil that she had been to Taylor's residence, and there was a computer in his home and Taylor had a smartphone, but she was unsure of the phone type. *Id.*

After the interview and cell phone data extraction were completed, Detective Getz and Sergeant Cecil analyzed the data and found multiple text message conversations involving Jane Doe, Taylor, and Angela. The text message conversations corroborated the information that Jane Doe told Detective Getz and Sergeant Cecil during her interview. Included in the text messages were messages from Taylor with links to websites of bestiality, followed by texts about "playing with" Jane Doe's horse and messages about a dog. During his investigation, Detective Getz confirmed that the websites sent by Taylor depicted images of men and women engaging in sexual activity with animals. *Id.* at 18–21.

On October 17, 2014, Detective Getz conducted surveillance on the Taylor residence located at 1304 Salem Creek Boulevard in Indianapolis, and he observed two vehicles parked at the house. He checked Indiana Bureau of Motor Vehicle records and learned that the vehicles were registered to Angela. Detective Getz confirmed with the United States Postal Service that Taylor and Angela received mail at the 1304 Salem Creek Boulevard residence. *Id.* at 21.

Detective Getz also submitted a mobile locator request to AT&T Wireless for the cell phone number (317) 250-0661, which was a cell phone number assigned to the Jared Foundation Inc., where Taylor served as the executive director for the Jared Foundation. Detective Getz received mobile locator results from February 2 to February 9, 2015, which placed the cell phone in the area of the 1304 Salem Creek Boulevard residence. *Id.*

After conducting his investigation, Detective Getz drafted an affidavit for a search warrant for the residence at 1304 Salem Creek Boulevard in Indianapolis. In the affidavit, he explained his law enforcement experience and Sergeant Cecil's law enforcement experience. He noted that not

every fact of the investigation was set forth in the affidavit, yet it explained the factual details described above. The affidavit included sections about computers and child pornography, characteristics of individuals who receive and collect images of child pornography, and procedures for seizing and searching computer systems. Detective Getz concluded in the affidavit that probable cause existed to believe crimes concerning bestiality and child pornography had been committed and evidence of those crimes would be found at the 1304 Salem Creek Boulevard residence. The affidavit was presented to a Marion Superior Court Judge who issued a search warrant on April 23, 2015 (Filing No. 47-5).

The April 23 search warrant was executed at 1304 Salem Creek Boulevard on April 29, 2015. During the search, law enforcement officers found child pornography on multiple electronic devices in the residence, including images and videos that appeared to have been created in the residence. Based on the camera angles of some of the videos, law enforcement officers concluded that there likely were hidden cameras in the house. Detective Getz requested a second search warrant to examine the seized items and another warrant was issued. Forensic examination of the electronic devices seized from 1304 Salem Creek Boulevard disclosed evidence of sexual exploitation of minor children and child pornography.

Taylor is presently charged, alone and in conspiracy with other individuals, with sexually exploiting multiple minor children between approximately 2011 and 2015. He is charged with using hidden cameras in his residence to surreptitiously record minor children in the bathroom, changing clothes, and engaging in sexual activity. The victims consist of members of Taylor's family as well as friends of those family members. Several of the victims have disclosed instances of hands-on sexual abuse by Taylor.  With a jury trial only a few months away, Taylor filed his Motion to Suppress on April 30, 2021 (Filing No. 62).

## II.   <u>LEGAL PRINCIPLES</u>

Just last month, the United States Supreme Court highlighted the sanctity of the home:

> The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. The very core of this guarantee is the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion. To be sure, the Fourth Amendment does not prohibit all unwelcome intrusions on private property—only unreasonable ones. We have thus recognized a few permissible invasions of the home and its curtilage. Perhaps most familiar, for example, are searches and seizures pursuant to a valid warrant.

*Caniglia v. Strom*, 593 U.S. ___, No. 20-157, slip op. at 3 (U.S. May 17, 2021) (internal citations and quotation marks omitted).

> "The essential protection of the warrant requirement of the Fourth Amendment" lies in the requirement that the usual inferences that reasonable people draw from evidence be drawn "'by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.'" *Illinois v. Gates*, 462 U.S. 213, 240, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983), quoting *Johnson v. United States*, 333 U.S. 10, 13–14, 68 S. Ct. 367, 92 L. Ed. 436 (1948). A magistrate's determination of probable cause is given great deference on review, and the Fourth Amendment requires no more than a substantial basis for concluding that a search would uncover evidence of a crime. *Gates*, 462 U.S. at 236.

*United States v. Glover*, 755 F.3d 811, 815–16 (7th Cir. 2014).

> In the oft-cited opinion from the *Gates* case, the Supreme Court noted,

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . concluding" that probable cause existed.

*Gates*, 462 U.S. at 238–39. Probable cause to issue a search warrant "exists if the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover

evidence of a crime." *United States v. Watzman*, 486 F.3d 1004, 1007 (7th Cir. 2007) (internal citation and quotation marks omitted).

"If the search or seizure was effected pursuant to a warrant, the defendant bears the burden of proving its illegality." *United States v. Longmire*, 761 F.2d 411, 417 (7th Cir. 1985). "Where the police have acted pursuant to a warrant, the independent determination of probable cause by a magistrate gives rise to a presumption that the arrest or search was legal." *Id.* Probable cause affidavits supporting applications for warrants are to be "read as a whole in a realistic and common sense manner," and "doubtful cases should be resolved in favor of upholding the warrant." *United States v. Quintanilla*, 218 F.3d 674, 677 (7th Cir. 2000) (citations omitted).

"When the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing . . . in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Franks v. Delaware*, 438 U.S. 154, 164–65 (1978) (internal citations and quotation marks omitted) (emphasis in original). "It is established law that a warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter." *Id.* at 165 (internal citations omitted). "Because it is the magistrate who must determine independently whether there is probable cause, it would be an unthinkable imposition upon his authority if a warrant affidavit, revealed after the fact to contain a deliberately or recklessly false statement, were to stand beyond impeachment." *Id.* (internal citations omitted).

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Id.* at 155–56. This also applies to intentionally or recklessly omitted material facts—"that is, if the fact[s] were included, the affidavit would not support a finding of probable cause." *United States v. Williams*, 737 F.2d 594, 604 (7th Cir. 1984).

## III.   DISCUSSION

The Court will first address Taylor's Motion to Suppress and then turn to the Government's Third Motion *in Limine*.

### A.   Taylor's Motion to Suppress

Taylor argues that the evidence seized from his home pursuant to the April 23, 2015 search warrant must be suppressed because of false statements in or omissions from the search warrant affidavit. He asserts he is entitled to a *Franks* hearing before the Court suppresses the evidence. Taylor bases his argument primarily on a comparison between the search warrant affidavit and the transcript of the recorded interview of Jane Doe.

Taylor asserts that Jane Doe was living with former Indianapolis Metropolitan Police Detective Ron Santa ("Det. Santa") when the ISP began its investigation of Taylor. He alleges that Jane Doe was engaged in a romantic relationship with Trooper Etter and that Jane Doe was occasionally engaging in group sex with Taylor and Angela around that time period when she made her report. Taylor argues that Jane Doe never filed a police report about his text messages to her; rather, Trooper Etter appears to have initiated the investigation into Taylor who also was having sex with Jane Doe. The search warrant affidavit did not reveal these relationships, and while the affidavit stated that Trooper Etter was approached by a female friend about Taylor's text messages, the recorded interview reveals that Trooper Etter was with Jane Doe when Taylor sent the text messages, and they were laughing about the pictures sent by Taylor.

Taylor argues that the affidavit inaccurately portrayed Jane Doe as a concerned citizen who contacted law enforcement, but in actuality, Trooper Etter was present when the text messages were received, and Trooper Etter took it upon himself to start the investigation of Taylor. He alleges that both he and Trooper Etter were sexual partners of Jane Doe, and Jane Doe was still making plans to socialize with Taylor during the investigation. The affidavit failed to disclose that the investigation was initiated by Taylor's competing romantic interest.

Taylor additionally argues that Det. Santa was improperly involved in the investigation. Taylor was confronted by Det. Santa in the summer of 2014 when Taylor was invited to Jane Doe's house. Taylor showed up at the house, and he was met by a naked Det. Santa waiving a firearm in Taylor's face. Det. Santa demanded that Taylor invite him to future sex parties with Jane Doe. That was the last time Taylor saw Det. Santa. The recorded interview with Jane Doe shows that Det. Santa was present during part of Detective Getz's interview, and Det. Santa volunteered information to Detective Getz about an investigation into Taylor for a drug-related case. None of this was included in the search warrant affidavit even though it could have undermined the credibility of the picture Detective Getz was portraying to the magistrate.

Further attacking the credibility of the search warrant affidavit, Taylor contends that the affidavit stated Jane Doe had reported she had seen Angela's breasts and knew she had large areolas, and the nude woman depicted in the image with the dog had large areolas, thereby allowing identification of the woman as Angela. However, nowhere in the recorded interview does Jane Doe identify Angela based on the size of her areolas. Taylor argues that Jane Doe had never before seen the dog depicted in the bestiality photo, the bestiality photo was publicly available, and the identification based on large areolas was vital to the probable cause determination, yet Jane Doe did not make that statement during the interview.

9

Taylor points out that Jane Doe thought Taylor never actually traveled to Thailand, but the search warrant affidavit omitted any testimony from Jane Doe that he had not actually been to Thailand, and that fact was vital to the probable cause determination. He contends the text messages indicate that Jane Doe asked for more images and asked about "young orgy." But Jane Doe testified during the interview that Taylor was not interested in sexual activities with children.

Taylor notes that the search warrant contains handwritten annotations which "cell phones" and "bestiality" with the initials "KLG" to the typewritten search warrant. "Upon information and belief [Taylor] asserts that these annotations were made after the issuance of the warrant at the time of the return. The handwriting style and color appear to match that of the Search Warrant Return executed by Kevin Lynn Getz." (Filing No. 62 at 16 n.6.) "Presumably Getz only added these handwritten time and date notes on the Government's document after the April 29, 2015, search was conducted." *Id.* at 18. Taylor contends "[a]n evidentiary hearing is necessary to determine whether or not Getz altered the search warrant to add-in the bestiality references prior to the April 29, 2015 search." *Id.* at 19.

Regarding the cell phone location data, Taylor argues that Detective Getz provided "misleading information" in his search warrant affidavit. Detective Getz deleted emails about the AT&T wireless data for the cell phone Detective Getz believed was used by Taylor. Some of the emails allegedly showed the cell phone location close to Taylor's home and other emails showed the cell phone was unable to be located. The cell phone records show that the phone was located at Taylor's home and also at the home of Jared Fogle in Zionsville, Indiana. The search warrant affidavit indicated the cell phone belonged to the Jared Foundation, but the cell phone records indicated the actual named user was Jared Fogle in Zionsville. The affidavit did not inform the

issuing judge of these facts or how often the cell phone was not located at Taylor's home. Taylor argues that issue also requires a *Franks* hearing.

The Court is not persuaded that a *Franks* hearing is necessary. and suppression of the evidence is not warranted. A hearing is required on the motion to suppress only when the defendants has demonstrated a significant factual dispute that must be resolved. See *United States of America v. Sophie,* 900 F.2d 1064 (7th Cir. 1990). Although Taylor challenges the accuracy, veracity and omission of several statements contained in the probable cause affidavit used to secure the search warrant, he has not made a substantial preliminary showing that any omission inaccurate statement could reasonably have affected the state court magistrate's finding of probable cause for the search warrant. Moreover, Suppression of the evidence is not warranted because the issuing judge correctly determined probable cause existed to issue the search warrant. The issuing judge clearly had a substantial basis for concluding that a search would uncover evidence of a crime at Taylor's residence. This is true even when considering in the probable cause determination the omissions and statements that Taylor raised in his Motion to Suppress.

The foundation for probable cause and the search warrant consists of the following:

After Trooper Etter contacted Detective Getz about a possible bestiality and child pornography investigation, Detective Getz called the source of Trooper Etter's information (Jane Doe), and she confirmed that she had received text messages from Taylor and the messages were still on her phone. She agreed to be interviewed and to allow a search of her cell phone. That same day, Detective Getz and Sergeant Cecil interviewed Jane Doe at her home, and she showed them a photo of a dog licking the nude genitalia of a woman with the caption, "Here's Angie with her ex's dog," which was on her cell phone and sent to her by Taylor.

Jane Doe explained to Detective Getz and Sergeant Cecil that she boards horses at her property, and Taylor sent multiple text messages to her asking if he and Angela could come over to engage in sexual activity with a horse. When asked if she thought Taylor was joking, Jane Doe responded that you could tell Taylor was serious. Jane Doe told Detective Getz and Sergeant Cecil that Taylor sent a text message to her asking if she wanted to see images of "young girls." Taylor asked Jane Doe how young she was okay with, and she responded, "legal age," to which

Taylor responded, "Ok[.] I wanted to ask lol. Keep in mind we do travel to Thailand on occasion :-)[.]" (Filing No. 47-5 at 20–21.)

Jane Doe also told Detective Getz and Sergeant Cecil that she had been to Taylor's residence, and there was a computer in his home and Taylor had a smartphone, but she was unsure of the phone type.

The cell phone data extracted from Jane Doe's phone included multiple text message conversations involving Jane Doe, Taylor, and Angela, and those messages corroborated the information that Jane Doe told Detective Getz and Sergeant Cecil during her interview. The data extraction showed Taylor sent text messages to Jane Doe with links to websites of bestiality and encouraged her to view them. He promptly sent additional text messages about wanting to come over to play with Jane Doe's horse and messages about a dog. During his investigation, Detective Getz confirmed that the websites sent by Taylor depicted images of people engaging in sexual activity with animals.

Detective Getz conducted surveillance on the residence located at 1304 Salem Creek Boulevard in Indianapolis. He observed two vehicles parked at the house, checked records from the Indiana Bureau of Motor Vehicles, and learned that the vehicles were registered to Angela. Detective Getz confirmed with the United States Postal Service that Taylor and Angela received mail at the 1304 Salem Creek Boulevard residence. Data from an AT&T mobile locator request placed the cell phone—which was a cell phone number assigned to the Jared Foundation Inc., and Taylor served as the executive director for the Jared Foundation—in the area of the 1304 Salem Creek Boulevard residence.

Detective Getz included all of these facts in his search warrant affidavit. He also included an explanation about the law enforcement experience and background of Sergeant Cecil as well as himself. The search warrant affidavit also included information about computers and child pornography, characteristics of individuals who receive and collect images of child pornography, and procedures for seizing and searching computer systems. The affidavit explicitly noted that the investigation involved both bestiality and child pornography with a conclusion that both crimes were committed at Taylor's residence.

Taylor argues that if Detective Getz had fully disclosed in the affidavit the sexual relationships among Taylor, Angela, Jane Doe, Trooper Etter, and Det. Santa, as well as the fact that Trooper Etter was present with Jane Doe when Taylor sent images and text messages to Jane

Doe, the credibility of Jane Doe would have been undermined and the issuing judge would not have found probable cause to issue the warrant.

Taylor relies on the case of *United States v. Glover*, 755 F.3d 811 (7th Cir. 2014), for his argument that adverse information about an informant's credibility warrants a *Franks* hearing and suppression of the evidence. However, that case is factually dissimilar and not helpful here. In *Glover*, the Seventh Circuit reversed and remanded on the issue of holding a *Franks* hearing. There, the informant's tip was minimally corroborated and had little detail. The informant had a criminal record even while he was serving as a government informant, he used aliases to deceive the police, he was involved in gang activity, and he expected payment for his tips. *Id.* at 817–18.

None of those facts exist here. There is no evidence that Jane Doe has a criminal record, she has used aliases to deceive the police, she has been involved in gang activity, or that she expected payment or received payment for providing information to Detective Getz. Even if the sexual relationships among Taylor, Angela, Jane Doe, Trooper Etter, and Det. Santa had been revealed to the issuing judge, those consensual adult relationships would not have adversely affected Jane Doe's credibility, especially in light of all the corroborating text messages. In this case, Jane Doe provided extensive detail, that detail was included in the affidavit, and the details were corroborated.

Taylor complains that Detective Getz's affidavit was misleading because it states Trooper Etter was approached by a female friend about concerning text messages while Jane Doe's interview clarifies that Trooper Etter was with Jane Doe when Taylor sent the text messages, and Taylor alleges Trooper Etter and Jane Doe were in a romantic relationship, not just friends. The affidavit correctly noted that Trooper Etter contacted Detective Getz to initiate the investigation and that Jane Doe was the source of Trooper Etter's information. Even if the affidavit had described

Jane Doe's relationship with Trooper Etter as romantic, rather than just a friendship, the affidavit provided more than enough detail that was corroborated to support probable cause.

Taylor suggests that Jane Doe was not really "concerned" about the "young girls" communication, but when the evidence is viewed in context and as a whole, it becomes clear that Jane Doe was concerned. She described the "young girls" comment as a "red flag," and it was out of left field as she was not expecting it (Filing No. 62-1 at 37–38). She told Detective Getz that, when Taylor asked her if she wanted to see images of young girls and how young she was okay with, "I told him 'Legal age' because I didn't want to see something else. I don't know. Pat and I were just sitting there laughing about it, all these pictures that he was sending. So, I was kind of egging it on, and it was completely out of left field." *Id.* at 34. "I didn't know that he was going to start asking questions like that, and after I said that, then he said, he thinks the next morning that they go to Thailand occasionally. But I haven't talked to him since then." *Id.* Jane Doe explained to Detective Getz that Taylor did not actually send images of young girls because she said she did not want to see them, but she noted that "maybe [she] should have egged him on." *Id.* at 16. She told Detective Getz, "It was just -- to me, it's just funny, like the things that he was sending *until he sent me the dog one*." *Id.* (emphasis added). And the "young girls" text was sent shortly after the dog image. When the evidence is viewed in context, Taylor is incorrect about Detective Getz misleading the issuing judge. Jane Doe did testify about being concerned about the "young girls" message, and Detective Getz's affidavit was not misleading.

Detective Getz's affidavit truthfully disclosed that, when Sergeant Cecil asked Jane Doe if Taylor sent images of young girls to her, she responded, "no." And when asked if Taylor ever expressed interest in having sex with children, Jane Doe replied, "Not that I can remember, but he's the type of person that seems to be very sexually involved in whatever." (Filing No. 47-5 at

18.) Detective Getz asked Jane Doe if Taylor had sent any other images of sexual activity with animals, and she responded that the only image she received from him was the photo of the dog. She explained that Taylor and Angela liked to be sexually involved with other things, like messing around with horses and bondage acts using "handcuffs, ropes and stuff." *Id.* Detective Getz did not omit these mitigating bits of information from his affidavit.

Taylor argues that Detective Getz's affidavit was misleading because it stated that Jane Doe had seen Angela's breasts, and she knew that Angela had large areolas, but nowhere in Jane Doe's interview does she discuss Angela's breasts. Taylor argues Detective Getz used this information to establish probable cause by identifying Angela in the dog bestiality photo, and without this identification, probable cause would not have been established. Taylor is correct in that Jane Doe's interview does not contain a statement from Jane Doe that she had seen Angela's breasts and knew that she had large areolas. However, even after removing that assertion from Detective Getz's affidavit, probable cause is still supported, and identification of Angela is readily available by Taylor's own text message that stated, "Here's Angie with her ex's dog," which accompanied the dog bestiality photo (Filing No. 47-5 at 17). Thus, Taylor's argument on this point is unavailing.

Taylor alleges Detective Getz intentionally omitted from the search warrant affidavit that Jane Doe told Detective Getz that she learned Taylor had not actually traveled to Thailand. However, Taylor's assertion does not support his argument for suppression when the evidence is viewed in context and as a whole. Jane Doe first learned about Thailand "the night that [Taylor] was asking me if I wanted to see him with younger girls because they go to Thailand a lot, but -- -- and I was told that he's never been there, so I don't know where that came from." (Filing No. 62-1 at 17.) "I didn't know that he was going to start asking questions like that, and after I said that, then he said, he thinks the next morning that they go to Thailand occasionally. But I haven't talked

to him since then." *Id.* at 34. When asked if Taylor gave any indication of when their last trip was or if they were planning a trip to Thailand, Jane Doe responded, "I want to say that I think that they -- I thought that -- I thought they had said that there wasn't any evidence that he had even gone there, so maybe it was just something to cover up what he said." Detective Getz replied, "I don't know that for a fact," and Jane Doe responded, "I'm just speculating." *Id.* at 34–35.

What is clear is that Jane Doe was uncertain about whether Taylor actually had traveled to Thailand. But whether Taylor actually did travel to Thailand does not undermine the probable cause that existed according to Detective Getz and the issuing judge. Regardless of whether he was joking or serious, it was Taylor who stated that he goes to Thailand on occasion. He made that statement to Jane Doe right after he had texted Jane Doe about young girls. Detective Getz explained in his affidavit that, based on his law enforcement training and investigation experience, he knew that people with sexual interests in children travel to Thailand because it is a child sex tourism hotspot. Even if Detective Getz's affidavit had included a statement that Jane Doe thought somebody had said there was not any evidence of Taylor actually traveling to Thailand, probable cause still would have existed because of Taylor's own text message explaining "we do travel to Thailand on occasion" after his "young girls" text message.

Taylor complains that Detective Getz provided misleading information in his search warrant affidavit about the cell phone location data. Detective Getz accurately represented that the cell phone number was assigned to the Jared Foundation Inc., and Taylor served as the executive director for the Jared Foundation. The affidavit also accurately represented that the mobile locator results placed the cell phone in the area of Taylor's residence. While Detective Getz did not explain that some of the locator results returned "unable to obtain position information" results, that does not negate the fact that the cell phone locator results did place the phone near Taylor's residence.

Probable cause concerning Taylor's residence was supported by the fact that the cell phone was located near Taylor's residence even with the occasional result that the cell phone was not located at all. Taylor complains the affidavit was misleading because it did not explain the AT&T "user information" as Jared Fogle with a Zionsville address; however, that same "user information" had an email address of "russell.taylor@yahoo.com." (Filing No. 47-2.) With all of that additional information, probable cause still existed to connect Taylor, the cell phone, and Taylor's residence.

Taylor raises a concern about handwritten annotations on the search warrant. The Court notes that the search warrant affidavit that supported the search warrant provided more than enough factual details about the investigation, about the investigating officers' training and experience, about the underlying crimes of bestiality and child pornography, and about the means and methods of storing child pornography and seizing and searching computers and cell phones to establish probable cause to support issuing the search warrant. With probable cause established, the issuing judge was justified in issuing a search warrant to search Taylor's residence for evidence of bestiality and child pornography. The search warrant authorized a search and seizure at Taylor's home for evidence of child pornography. Even putting aside the handwritten annotations, the search warrant still validly authorized the search of Taylor's residence that occurred on April 29, 2015.

The Court concludes that the search of Taylor's residence was authorized by a valid search warrant that was supported by probable cause, and the omissions and statements raised by Taylor in his Motion to Suppress fail to invalidate the search warrant and fail to undermine the probable cause in this case. A *Franks* hearing is not necessary because Taylor has not made a substantial preliminary showing that a false statement (or omission) knowingly and intentionally, or with

reckless disregard for the truth, was included (or omitted) by Detective Getz in the warrant affidavit that was necessary to the finding of probable cause.

## B.   **Government's Third Motion *in Limine***

The Government's Third Motion *in Limine* is essentially the inverse of Taylor's Motion to Suppress. In its Motion, the Government asks the Court to allow it to introduce the evidence seized from Taylor's house at 1304 Salem Creek Boulevard on April 29, 2015, during its case-in-chief. Taylor did not respond to the Government's Motion; instead, Taylor filed a Motion to Suppress a month and a half after the Government's Motion. For the same reasons discussed above in denying Taylor's Motion to Suppress, the Court **grants** the Government's Third Motion *in Limine*, and it may introduce during its case-in-chief the evidence seized from Taylor's home on April 29, 2015.

## IV.   CONCLUSION

For the reasons set forth above, the Court **DENIES** Taylor's Motion to Suppress (Filing No. 62) and determines that there is no need to set this matter for a *Franks* hearing. The Court **GRANTS** the Government's Third Motion *in Limine* (Filing No. 47), and it may introduce during its case-in-chief the evidence seized from Taylor's home on April 29, 2015.

**SO ORDERED.**

Date:   6/14/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Jeremy Brian Gordon
Law Office of Jeremy Gordon
jeremy@gordondefense.com

Zachary Lee Newland
JEREMY GORDON, PLLC
zach@gordondefense.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov

Bradley Paul Shepard
UNITED STATES ATTORNEY'S OFFICE
brad.shepard@usdoj.gov